Approved: _/s/ Alex Rossmiller_
Alex Rossmiller
Assistant United States Attorney

[Stamp: U.S. DISTRICT COURT FILED FEB 10 2015 S.D. OF N.Y.]

ORIGINAL

DOC # 1

Before:  HONORABLE MICHAEL H. DOLINGER
         United States Magistrate Judge
         Southern District of New York

**15 MAG 0383**

- - - - - - - - - - - - - - - - - x
                                  :  **SEALED COMPLAINT**
UNITED STATES OF AMERICA          :
                                  :  Violation of
         - v. -                   :  21 U.S.C. § 846
                                  :
NICHOLAS KALOUDIS,                :  COUNTY OF OFFENSE:
                                  :  NEW YORK
              Defendant.          :
                                  :
- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

   BRUCE WAYNE, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE

   1.   From in or about 2013, through in or about February 2015, in the Southern District of New York and elsewhere, NICHOLAS KALOUDIS, the defendant, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree with others to violate the narcotics laws of the United States.

   2.   It was a part and an object of the conspiracy that NICHOLAS KALOUDIS, the defendant, and others known and unknown, would and did distribute and possess with intent to distribute a controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

   3.   The controlled substance that NICHOLAS KALOUDIS, the defendant, conspired to distribute and possess with intent to distribute was mixtures and substances containing Oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(b)(1)(C).

           (Title 21, United States Code, Section 846)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4. I am a special agent with the FBI, and I have been involved in the investigation of the above-described offense. I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my review of pertinent documents, and from my conversations with fellow law enforcement officers. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

5. Based on my training and experience, which includes the investigation of the diversion of legitimately manufactured pharmaceuticals to unauthorized individuals, and my conversations with other law enforcement agents, I am familiar with various types of controlled substances that are often distributed illegally. As relevant to this investigation, I have learned the following:

   a. Oxycodone is a semi-synthetic opioid analgesic that is similar to codeine and morphine. It is a Schedule II controlled substance. Oxycodone is the active ingredient in OxyContin, Percocet, Endocet, Roxicodone, and Roxicet.

   b. Oxycodone may be prescribed legitimately to relieve moderate to severe pain, but can result in addiction similar to an addiction to codeine or morphine. There is an illegal market for oxycodone, as a substitute for, or adjunct to, other illegal narcotics, such as heroin.

6. Since in or about Fall 2014, I have participated in an FBI investigation into individuals distributing prescription medications containing controlled substances, such as oxycodone, without authorization, and into physicians issuing prescriptions for such controlled substances without a legitimate medical basis. The investigation has involved, among other things, surveillance, the use of cooperating witnesses, and the consensual recording of meetings.

7.  The FBI has been assisted in its investigation by a Confidential Source ("CS-1").[1]

8.  Based on my review of public information published by the State of New York, I have learned, among other things, that NICHOLAS KALOUDIS, the defendant, is a registered physician in New York who is licensed to practice medicine.

9.  I have learned that NICHOLAS KALOUDIS, the defendant, works at an office in Manhasset, New York ("Office-1") by, among other things, surveillance conducted by myself and other law enforcement agents, my conversations with CS-1, and my review of video and audio recordings made by CS-1 of KALOUDIS and others in Office-1.

10. CS-1 has told law enforcement agents the following, in substance and in part:

   a.  In or about 2013, CS-1, who was not cooperating with law enforcement at the time, was introduced to NICHOLAS KALOUDIS, the defendant, by a co-conspirator not named as a defendant herein ("CC-1"). CC-1 had previously assisted CS-1 with efforts to illegally obtain oxycodone.

   b.  In or about 2013, CS-1 began meeting with KALOUDIS on a regular basis to purchase, in cash, prescriptions from KALOUDIS for various amounts of oxycodone, in the name of CS-1 and at least one other individual whom KALOUDIS never met or examined. KALOUDIS charged CS-1 different amounts for the prescriptions depending on the number of pills prescribed.

   c.  KALOUDIS understood that CS-1 was selling the oxycodone obtained with the illicit prescriptions. Specifically, KALOUDIS told CS-1, in substance and in part, that CS-1 did not have to pay up front for the prescriptions, but, rather, could pay for the prescriptions after CS-1 sold the oxycodone.

   d.  After obtaining the prescriptions from KALOUDIS, CS-1 filled the prescriptions in New York City and then traveled to Virginia, through the Southern District of New York, to sell

---

[1] CS-1 has committed federal narcotics offenses and is cooperating with the FBI and the Government in the hope of obtaining a cooperation agreement with the Government and ultimately obtaining leniency at sentencing. Information that the CW has provided in the course of this investigation, including the information in this Complaint, has proven accurate and reliable and has been corroborated by among other things, surveillance and consensual recordings.

the oxycodone in Virginia.

   11.   On or about February 4, 2015, now acting at the direction and under the supervision of law enforcement, CS-1 made a consensual video and audio recording of a meeting with NICHOLAS KALOUDIS, the defendant, at Office-1.  From my review of the video and audio recording of this meeting, I have learned in substance and in part that:

      a.   After waiting in the waiting area in Office-1, CS-1 was led to a private office where CS-1 met with KALOUDIS. Consistent with prior practice between CS-1 and KALOUDIS, CS-1 was not examined by KALOUDIS or anyone else in the office.

      b.   During this meeting, KALOUDIS proposed to CS-1 that at a subsequent meeting, CS-1 bring money and a list of names, and KALOUDIS would write prescriptions for those names in exchange for cash payment by CS-1.

   12.   On or about February 6, 2015, at the direction and under the supervision of law enforcement, CS-1 made a consensual video and audio recording of a meeting with NICHOLAS KALOUDIS, the defendant, at Office-1.  From my review of the video and audio recording of this meeting, I have learned, in substance and in part, that:

      a.   After waiting in the waiting area in Office-1, CS-1 was led to a private office where CS-1 met with KALOUDIS. CS-1 was not examined by KALOUDIS or anyone else in the office.

      b.   During this meeting, CS-1 paid KALOUDIS $5,000, provided to CS-1 for this purpose by law enforcement, in exchange for prescriptions for CS-1 and another individual for the following controlled substances:

         i)   Two prescriptions for 150 count oxycodone 30 mg, one in the name of CS-1 and one in the name of another individual;

         ii)  One prescription for 120 count oxycodone/ acetaminophen ("Percocet") 5/325 mg, in the name of CS-1; and

         iii) One prescription for 90 count of Adderall 10 mg, in the name of another individual.

      c.   During the meetings on February 4, 2015, and February 6, 2015, KALOUDIS did not physically examine or

4

otherwise inquire into the health of CS-1, nor did KALOUDIS examine or meet the other individual for whom a prescription was written.

      d.    When CS-1 asked KALOUDIS, in substance and in part, "What can you write me for today?", referring to prescriptions, KALOUDIS replied, in substance and in part, "Whatever you want."

      e.    When CS-1 asked KALOUDIS, in substance and in part, "So, how many we gonna do on Monday, when I come in?", referring to prescriptions KALOUDIS had promised to write for CS-1 at their next meeting, in exchange for cash payment, KALOUDIS replied, in substance and in part, "Whatever you want. . . You just came up with five [thousand dollars] . . . Whatever you want, I'll do."

    13.    Immediately following the February 6, 2015, meeting described above between CS-1 and NICHOLAS KALOUDIS, the defendant, CS-1 met with FBI agents. CS-1 had in CS-1's possession, among other things, two prescriptions for 150 oxycodone 30 mg tablets; one prescription for 120 Percocet tablets; and one prescription for 90 Adderall tablets, all signed by KALOUDIS.

    14.    On or about February 9, 2015, at the direction of law enforcement, CS-1 consensually recorded a telephone call with KALOUDIS. From my review of the audio recording of this call, I have learned, in substance and in part, that KALOUDIS and CS-1 discussed setting up a meeting soon at which CS-1 will provide a list of names for KALOUDIS for whom KALOUDIS will write prescriptions, in exchange for payment.

WHEREFORE, the deponent respectfully requests that NICHOLAS KALOUDIS, the defendant, be arrested, and that he be imprisoned or bailed, as the case may be.

_____
BRUCE WAYNE
Special Agent
Federal Bureau of Investigation

Sworn to before me this
10th day of February 2015

_____
HONORABLE MICHAEL H. DOLINGER
United States Magistrate Judge
Southern District of New York